838 So.2d 948 (2002)
Bonnie HAGGERTY
v.
Steven FOSTER and Foster Construction Company.
No. 2001-CA-00551-SCT.
Supreme Court of Mississippi.
December 5, 2002.
Rehearing Denied March 13, 2003.
*951 Austin R. Nimocks, Gulfport, attorney for appellant.
*952 William E. Whitfield, III, Gulfport, Samuel Trent Favre, attorneys for appellees.
Before SMITH, P.J., COBB and DIAZ, JJ.
DIAZ, J., for the Court:
¶ 1. Bonnie Haggerty (Haggerty) filed her Complaint in the Circuit Court of Harrison County, First Judicial District, against Steven Foster and Foster Construction Company (collectively hereinafter "Foster"), seeking to recover damages she sustained in a car accident on U.S. Highway 49 in Harrison County, Mississippi, on September 27, 1996. After trial on the matter, the jury returned a verdict in favor of Foster, and judgment was entered accordingly. The trial court denied Haggerty's Motion for Judgment Notwithstanding the Verdict, or Alternatively, for a New Trial. Aggrieved by the judgment and the trial court's denial of her motions, Haggerty appeals, presenting the Court with the following five issues:
I. WHETHER THE CIRCUIT COURT ERRED IN GIVING JURY INSTRUCTION D-6A AND NOT GIVING JURY INSTRUCTION P-8A.
II. WHETHER THE CIRCUIT COURT ERRED IN NOT GRANTING HAGGERTY'S CHALLENGES FOR CAUSE DURING VOIR DIRE.
III. WHETHER THE CIRCUIT COURT ERRED IN NOT ALLOWING HAGGERTY TO TESTIFY, UTILIZE DEMONSTRATIVE ITEMS, AND INTRODUCE EVIDENCE REGARDING HER DAMAGES DURING THE COURSE OF THE TRIAL.
IV. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING HAGGERTY'S OBJECTION TO THE APPELLEE'S CLOSING ARGUMENT ON ACCIDENT RECONSTRUCTION.
V. WHETHER THE CIRCUIT COURT ERRED IN DENYING HAGGERTY'S MOTION FOR A NEW TRIAL, OR ALTERNATIVELY, JUDGMENT NOTWITHSTANDING THE VERDICT.

FACTS
¶ 2. On September 27, 1996, Haggerty was traveling north on U.S. Highway 49 in Gulfport, Mississippi, intent on turning east at the upcoming intersection of Highway 49 and Creosote Road. Steven Foster was proceeding south on Highway 49, traveling to McDonald's restaurant to eat lunch. McDonald's is located just south of the intersection of Highway 49 and Creosote Road. Northbound traffic was stopped for a traffic signal at that intersection. Motorists who were stopped at the signal made a corridor for Foster to pass between them and enter McDonald's parking lot. Foster crossed three lanes of northbound traffic. Foster and his employee, Vince Wolfson (Wolfson), both testified that they looked up the turn lane and saw no vehicles approaching. Wolfson testified that he could only see 20 or 30 feet down the turn lane. As Foster crossed the turn lane, his vehicle was struck by Haggerty's. Wolfson testified that he saw Haggerty's vehicle immediately before impact and judged her speed at approximately 20 to 30 miles per hour. He testified that he had looked down the turn lane and seen no one coming, looked away as Foster started across, then looked back and saw Haggerty's vehicle immediately before impact. He estimated that Foster was in the process of crossing the turn lane for approximately 3 or 4 seconds. Foster testified that he never saw Haggerty prior to impact. *953 He further testified that his vehicle had nearly entered McDonald's parking lot at the time of the accident and that he had crossed 8-10 feet of the 11 feet turn lane.
¶ 3. Haggerty testified that she did not see Foster's vehicle until the impact occurred. She testified that she was in the turn lane, she slowed her vehicle to allow another car in front of her to make a right turn into a car dealership immediately south of McDonald's, then she proceeded in the turn lane. She testified that she continued driving in the turn lane and then Foster's vehicle pulled out in front of her and she hit him without having time to react. She estimated that she was going approximately 15 miles per hour at the time of the collision. She also testified that Foster's truck continued moving after the accident and dragged her and her vehicle into the McDonald's parking lot.

DISCUSSION

I. WHETHER THE CIRCUIT COURT ERRED IN GIVING JURY INSTRUCTION D-6A AND NOT GIVING JURY INSTRUCTION P-8A.
¶ 4. As her first assignment of error, Haggerty cites the trial court's error in allowing and denying certain jury instructions. When determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole to determine whether a jury has been incorrectly instructed. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Coleman v. State, 697 So.2d 777, 782 (Miss. 1997); Collins v. State, 691 So.2d 918, 922 (Miss.1997) (citing Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982)); Jackson v. Griffin, 390 So.2d 287, 290 (Miss.1980).
¶ 5. Haggerty's three challenges to the trial court's disposition of jury instructions are discussed in turn below.
(A) Whether Jury Instruction D-6A is Based Upon an Improper Legal Standard.
¶ 6. Haggerty cites as error the trial court's giving of instruction D-6A, claiming that it is based upon an improper legal standard. Instruction D-6A, states in pertinent part: "that if, based upon the instructions of this Court, you find that the Defendants ... were negligent ... you may reduce any verdict for damages by an amount or percentage which reflects the negligence, if any of the Plaintiff." (emphasis added). Haggerty argues this portion of the instruction required the jury to base its findings as to the negligence of the defendants upon the instructions of the court, rather than on the evidence presented at trial. Haggerty contends this error was compounded by a later portion of that same paragraph in the instruction, which instructed the jury to determine any negligence on the part of the plaintiff by what is demonstrated by the evidence. That portion reads: "The application and reduction of damages to the Plaintiff by her comparative negligence, if any, is left to your sole discretion if any negligence on her part is demonstrated by the evidence in this case by the Defendants, Steven Foster and Foster Construction Company." (emphasis added). The next paragraph of the instruction provides that "in the event you find that the Defendants were negligent as described in other instructions... If based upon the evidence, you find that the Plaintiff was comparatively negligent, then you must assign a percentage for her negligence ...." (emphasis added). Haggerty argues this instruction improperly charged the jury to utilize different standards as to the findings to be made regarding each party.
*954 ¶ 7. The findings of the jury are to be based only on the evidence presented at trial. Meaut v. Langlinais, 240 Miss. 242, 126 So.2d 866 (1961). The statements of counsel are not evidence, Walker v. State, 671 So.2d 581, 618 (Miss.1995), and neither are the instructions of the court which should only serve to guide the jury as to the applicable law. See Carmichael v. Agur Realty Co., 574 So.2d 603, 612 (Miss.1990); Cintgran v. Board of Trustees of Shelby Hosp., 222 So.2d 677, 678 (Miss.1969). Cf. Rogers v. State, 796 So.2d 1022, 1027 (Miss.2001) ("The evidence which you are to consider consists of the testimony and statements of the witnesses and the exhibits offered and received."). Nonetheless, in keeping with the applicable standard of review on jury instructions discussed above, it is improper to consider excerpts from the jury instruction or to evaluate portions of the jury instruction out of context since the instruction must be considered with the other instructions given. Instruction D-6A instructs the jury to make its determination based on all of the instructions of the court. Instruction C-1 instructs the jury to "conscientiously consider and weigh the evidence... determine the facts and to determine them from the evidence produced in open court ... your verdict should be based on the evidence." We conclude that, when read as a whole, the jury instructions fairly announce the applicable law.
¶ 8. Moreover, at trial Haggerty objected to instruction D-6A only on the grounds that it addressed comparative fault. Haggerty's attorney did not object to the specific wording now complained of on appeal. In fact, during the instruction conference Haggerty's attorney agreed to the giving of Instruction D-6A, stating, "I have no objection to this wording, assuming the Court is going to allow a comparative fault instruction." In order to preserve an objection for appeal, an attorney must make a contemporaneous objection. Gatlin v. State, 724 So.2d 359, 369 (Miss. 1998); Mitchell v. Glimm, 819 So.2d 548, 2002 WL 454021 at *4 (Miss.Ct.App.2002). "Failure to make a contemporaneous objection and allow the trial court opportunity to cure the defect is a procedural bar and constitutes a waiver of the argument on appeal." Id. Because Haggerty's attorney failed to object to the language at trial, the trial judge did not have an opportunity to cure any possible defect. Haggerty's objection to the language was therefore not properly preserved and her argument on appeal is not properly before the Court and is denied.
¶ 9. This assignment is without merit.
(B) Whether Jury Instruction D-6A should not have been given because there existed no evidence to support Foster's theory or argument that Haggerty was negligent.
¶ 10. Haggerty also argues that since no factual basis was developed at trial that indicated that she contributed in any way to the accident, Instruction D-6A, a comparative fault instruction, was erroneously given. She cites the cases of Vines v. Windham, 606 So.2d 128 (Miss. 1992), and McKinzie v. Coon, 656 So.2d 134 (Miss.1995), in support of this argument.
¶ 11. In Vines, this Court held that a comparative negligence instruction was improper where the evidence was clearly insufficient to support a finding of contributory fault. The defendant's comparative negligence instruction was submitted to the jury despite his bare testimony that he did not see the plaintiff's vehicle when he last looked. This Court held that the defendant's sole assertion could not independently establish a "safe and dependable probability" that the plaintiff was driving *955 negligently. Vines, 606 So.2d at 132. In the case at bar, while Foster asserts he did not see Haggerty's vehicle, his assertion does not stand alone. Both Foster and Wolfson testified that they proceeded with caution across the lanes and that they stopped prior to crossing an empty and untraversed turn lane. Foster and Wolfson testified that they could see no cars proceeding up the lane.
¶ 12. In Vines, this Court found it significant that the defendant's vehicle was struck on its left front fender, indicating that he had only just begun to enter the intersection when the vehicles collided and that, therefore, the accident was his fault. In the case sub judice, Foster presented evidence that Haggerty struck Foster's vehicle in its mid-section as Foster's truck had already begun to cross the outside line of the turn lane and was partially in the McDonald's parking lot. This evidence tends to demonstrate that Foster's vehicle was well within the turn lane when the accident occurred and, coupled with the testimony of both Foster and Wolfson that they did not see Haggerty before Foster entered the turn lane, creates the possibility that Haggerty was partially or wholly responsible for the accident; a theory the jury appears to have believed.
¶ 13. In McKinzie, this Court reversed a trial court's denial of a plaintiff's motion for directed verdict where the defendant admitted he entered an intersection and did not see the plaintiff's vehicle until it was too late, stating that the defendant failed to offer proof to contradict the plaintiff's version of the accident. Conversely, the plaintiff had presented an accident reconstructionist who corroborated plaintiff's testimony about her speed as well as two disinterested witnesses who testified that the defendant was not paying attention when he pulled into the intersection. In the case at bar, Haggerty was the only Plaintiff's witness testifying to her speed. She testified that, although she was only traveling 15 miles per hour, she did not see Foster until impact. Defense witness Wolfson testified as to Haggerty's approximate speed. Both Foster and Wolfson testified that they looked up the turn lane and did not see Foster's vehicle. Unlike the defendant in McKinzie, Foster refuted Haggerty's unsubstantiated version of the facts through his own testimony, the testimony of a factual witness, property damage and photographs.
¶ 14. The general rule is that all instructions must be supported by the evidence. Where an instruction is not supported by evidence then it should not be given. Dennis v. State, 555 So.2d 679, 683 (Miss.1989); Moffett v. State, 540 So.2d 1313 (Miss.1989); Nicolaou v. State, 534 So.2d 168 (Miss.1988). Granting instructions not supported by evidence is error. Lancaster v. State, 472 So.2d 363, 365 (Miss.1985). Foster affirmatively pled comparative fault in his answer and presented evidence in support of his theory that Haggerty was negligent. This Court has held that "[a] party has a right to have jury instructions on all material issues presented in the pleadings or evidence." Glorioso v. Young Mens Christian Ass'n of Jackson, 556 So.2d 293, 295 (Miss.1989); see also Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss.1984); Alley v. Praschak Mach. Co., 366 So.2d 661 (Miss. 1979). Because Foster presented evidence regarding Haggerty's comparative fault that sufficiently raised a jury question as to how the accident occurred, instructing the jury on comparative fault was not error.
¶ 15. This assignment is without merit.
(C) Whether Jury Instruction P-8A should have been given because: (1) the reasonableness and necessity of Haggerty's medical expenses is an element of *956 her prima facie case, (2) the Jury must be instructed on every element of her prima facie case, and (3) both parties agreed as to the reasonableness and necessity of her medical expenses.
¶ 16. Haggerty argues that the trial court erred in refusing to submit to the jury an instruction to the effect that Foster admitted that Haggerty's medical expenses were reasonable and necessary. Haggerty argues that the trial court's refusal to give the instruction was error because the jury must be instructed as to each and every element of the prima facie case at issue. Haggerty cites two criminal cases for this proposition, Havard v. State, 800 So.2d 1193, 1199 (Miss.2001) ("Reversible error is committed when the instructions do not instruct the jury on the essential elements of the crime."); Berry v. State, 728 So.2d 568, 570 (Miss.1999) (finding plain error where the jury is not fully instructed as to all elements of the crime charged). She argues that there is no logical basis to distinguish these cases from the case at bar.
¶ 17. In Mississippi, in order for a plaintiff to recover for medical expenses from an accident or otherwise, it must be shown that the medical expenses incurred were both reasonable and necessary. See Miss.Code Ann. § 49-9-119 (1999); Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984). Haggerty urges that where the jury was asked to make a damages finding involving medical expenses, the jury needed to be instructed that the parties had agreed to the reasonableness and necessity of those expenses.
¶ 18. Foster counters by arguing that Haggerty waived this assignment of error by virtue of her attorney failing to state distinctly in the record the matter to which he objected to the court's refusal of this instruction. Attorneys must dictate their specific objections on jury instructions into the record. M.R.C.P. 51(b)(3); URCCC 3.07. Haggerty's attorney failed to make any argument at all supporting the instruction. However, this Court has made clear that once an instruction has been submitted, subsequent objections to their refusal are unnecessary. "The point is procedurally preserved by the mere tendering of the instructions, suggesting that they are correct and asking the Court to submit them to the jury. This in and of itself affords counsel opposite fair notice of the party's position and the Court an opportunity to pass upon the matter. When the instructions are refused, there is no reason why we should thereafter require an objection to the refusal unless we are to place a value upon redundancy and nonsense." Carmichael v. Agur Realty Co., 574 So.2d 603, 612 (Miss.1990).
¶ 19. The reasonableness and medical necessity of Haggerty's medical bills were stipulated by the parties. Haggerty testified regarding them, and her counsel explained the stipulation pertaining to them to the jury in closing argument. The trial court was of the opinion that an instruction regarding them was unnecessary as the jury was fully informed as to their reasonableness and medical necessity, and the fact that the parties stipulated to those facts. This Court agrees. If there was any error in disallowing the instruction regarding damages, it was harmless because the stipulation and evidence regarding the reasonableness and medical necessity of the medical expenses were adequately presented to the jury through argument and testimony.
¶ 20. This assignment is without merit.

II. WHETHER THE CIRCUIT COURT ERRED IN NOT GRANTING HAGGERTY'S CHALLENGES FOR CAUSE DURING VOIR DIRE.
*957 ¶ 21. Haggerty asserts as error the circuit court's denial of her challenges for cause against jurors Cheryl Ohman and Chellie Orman. This Court approaches such contentions under the following guidelines:
A circuit judge has wide discretion in determining whether to excuse any prospective juror, including one challenged for cause. The circuit judge has an absolute duty, however, to see that the jury selected to try any case is fair, impartial and competent. "Trial judges must scrupulously guard the impartiality of the jury and take corrective measures to insure an unbiased jury."
Brown v. Blackwood, 697 So.2d 763, 769 (Miss.1997) (citations omitted). Additionally, it is a generally accepted principle that "jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference." Scott v. Ball, 595 So.2d 848, 850 (Miss.1992) (citations omitted). Keeping this precedent in mind, Haggerty's contentions of error in the trial court's refusal to remove two jurors for cause are discussed in turn below.
(A) Whether Venireman Ohman should have been excused for cause due to her career as an insurance claims adjuster.
¶ 22. Haggerty first challenges the trial court's discretion in denying her challenge for cause against Cheryl Ohman (Ohman). The challenge was based on Ohman's twenty years of employment as a claims adjuster with an insurance company. During voir dire, Haggerty's attorney asked Ohman whether she could leave her work experience behind her. She replied, "if you want me to be honest, maybe not. I believe I could listen to the facts and be fair. But I mean, it has been 20 years. It's been, you know, half my lifetime." She also stated that she could "listen to the facts and be fair with the facts" and further, "apply the law."
¶ 23. The trial court refused to remove Ohman for cause, finding that her extended employment as a claims adjuster was insufficient to demonstrate her prejudice. This decision was within the trial court's discretion. Ohman testified that she could listen to the facts, be fair, and apply the law. Mere employment with an insurance company, without more, is not enough to demonstrate bias and prejudice sufficient to warrant removal for cause.
(B) Whether Venireman Ormon should have been excused for cause due to possible bias against lawyers and clients of law firms who participated in any forms of advertising.
¶ 24. Haggerty challenged Ormon for cause based on her statements regarding lawyers who advertise.[1] The trial court interviewed Ormon to determine her ability to be fair and impartial. He asked whether her opinions regarding lawyer advertising would cause her to be opposed to Haggerty's position. Though Ormon expressed her dislike of lawyer advertisements on television, she also represented to the trial court that she would listen to both sides. Ormon stated, "I honestly think that after I hear the facts, I can say `Well, if it was his fault,you know, that's it.'" The trial court's questions of Ormon and her responses that she could be impartial despite her aversion to lawyers who advertise, indicate sound reasoning for the trial court's denial of the challenge for cause. Failure to grant this *958 challenge for cause was not an abuse of discretion. Therefore, this issue is without merit.

III. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION ON EVIDENTIARY RULINGS.
¶ 25. Haggerty next asserts as error the trial judge's rulings on various evidentiary issues. Our standard of review for the admission of or refusal to admit evidence is well settled. "`[A]dmission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion.'" Broadhead v. Bonita Lakes Mall, Ltd. P'ship, 702 So.2d 92, 102 (Miss. 1997) (quoting Sumrall v. Miss. Power Co., 693 So.2d 359, 365 (Miss.1997)); Gen. Motors Corp. v. Jackson, 636 So.2d 310, 314 (Miss.1992); Walker v. Graham, 582 So.2d 431, 432 (Miss.1991). Demonstrative evidence may be admitted at the trial court's discretion, if such evidence was reasonably necessary and material, Murriel v. State, 515 So.2d 952, 956 (Miss.1987), and appropriate and relevant. Gandy v. State, 373 So.2d 1042, 1047 (Miss.1979). Furthermore, where error involves the admission or exclusion of evidence, this Court "will not reverse unless the error adversely affects a substantial right of a party." In re Estate of Mask, 703 So.2d 852, 859 (Miss. 1997); Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995). With this precedent in mind, each of Haggerty's alleged evidentiary errors are discussed below.
(A) Whether Haggerty should have been allowed to show the jury empty pill bottles which held the medications she was required to take as a result of the accident.
¶ 26. Haggerty attempted to use approximately one hundred empty pill bottles to demonstrate to the jury how much medication she was required to take. Haggerty did not intend to introduce the bottles into evidence. Foster objected on the grounds that the pill bottles were not disclosed in discovery and that they had no relevance since the medications were not an issue at trial. He argued they were only to be used to inflame the jury or garner the sympathy of the jury. The trial judge sustained Foster's objection and refused to allow Haggerty to use the pill bottles. Haggerty asserts this as error, citing numerous cases for the proposition that demonstrative evidence is often admitted for the purpose of bringing the jury to a better understanding of the case.
¶ 27. Haggerty was allowed to introduce a list of the prescriptions she was required to take after the accident. The amount of medication she was required to take was the point Haggerty sought to make through the display of the pill bottles. We conclude that the point was sufficiently, if not as persuasively or dramatically, demonstrated to the jury through the prescription list. Therefore, Haggerty has failed to show that she was prejudiced by the judge's ruling or that his decision was an abuse of discretion. Thus, this assignment is without merit.
(B) Whether Haggerty should have been allowed to use a spine model as a demonstrative device during trial to assist the jury in better understanding the nature and location of her injuries.
¶ 28. Haggerty attempted to use a model of a spine to point out the parts of the spine as her doctor witness testified about them. Foster's attorney objected on the grounds that the model was not disclosed in discovery and that Haggerty's counsel was not trained in medicine and did not have the experience necessary to explain the model to the jury. The trial *959 judge sustained the objection. Haggerty argues this was error, citing Hall v. State, 691 So.2d 415 (Miss.1997).
¶ 29. In Hall, a photograph was held admissible in conjunction with a doctor's testimony because the doctor testified it was difficult "to simply describe things without some form of visual aid because most people don't understand anatomy." Hall, 691 So.2d at 418-19. Haggerty asserts that her counsel intended to use the spine model just like the photograph in Hall, pointing out the parts of the spine as the doctor testified about them.
¶ 30. This Court has developed strict discovery rules in order to avoid trial by ambush and to insure each party has a reasonable time to prepare for trial. It is committed to the discovery rules because they promote fair trials. Once an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring. Harris v. General Host Corp., 503 So.2d 795, 797 (Miss.1986); Tolbert v. State, 441 So.2d 1374, 1375 (Miss. 1983). We conclude that the trial judge did not abuse his discretion in refusing to allow introduction of the model. Haggerty was not prejudiced by the refusal since the doctor's testimony was allowed,[2] use of the model was not essential for the jury's understanding of her injury, and the model was not disclosed to the defense during discovery.
(C) Whether Haggerty was improperly prohibited from testifying about her impression and understanding of her MRI results.
¶ 31. At trial, Haggerty was asked to give her "impression after the visit to her doctor about the MRI results." Foster's counsel objected and the trial judge inquired whether she would have to have gotten these impressions based upon what the doctor told her. When Haggerty responded in the affirmative, the judge sustained the objection. Haggerty cites this as error, relying on Mississippi Rules of Evidence 602 and 701 for the proposition that she can give her impression about her injuries. Haggerty also cites the recent Court of Appeals case of Kroger Co. v. Scott, 809 So.2d 679, 688 (Miss.Ct.App. 2001). In Kroger, the plaintiff's opinion as to "why she [wanted] 74,000" in damages was ruled to be admissible under Rules 602 and 701 since the testimony was rationally based on the perception of the witness and helpful on the issue of pain and suffering. However, it is well established law that a plaintiff is clearly incompetent to testify regarding his or her own medical prognosis and treatment. Graves v. Graves, 531 So.2d 817, 822 (Miss.1988) (citing Temple Constr. Co. v. Naylor, 351 So.2d 1350, 1352 (Miss.1977)).
¶ 32. Kroger is distinguishable from the case at bar in that here Haggerty was not prohibited from testifying about her perception of her injuries, but only her impression of the MRI. Any impression of the MRI was outside the understanding of Haggerty and her knowledge of it was only gleaned through conversations with her doctor. Allowing Haggerty to testify as to those conversations would be to introduce hearsay into the proceedings. Moreover, this testimony from Haggerty was unnecessary, as the deposition of her doctor explaining the MRI results was later read to the jury.[3] Although she was *960 not allowed to testify regarding the MRI, Haggerty was not denied an opportunity to describe her physical problems, pain, and suffering to the jury. Therefore, any error committed by not allowing her to testify to the results of her MRI was harmless.
(D) Whether the trial court properly excluded the medical report of Dr. Richardson and testimony regarding his treatment.
¶ 33. Haggerty asserts as error the trial court's sustaining an objection to her introduction of evidence regarding her visit with a plastic surgeon, Daniel Richardson, M.D. Dr. Richardson advised Haggerty that nothing could be done to remove the scar on her neck which resulted from neck surgery following the accident. Haggerty alleges refusal of this evidence was error because she withdrew the cost of the visit as an element of her damages, therefore, she argues no prejudice could result to Foster from its introduction. She argues that her visit with Dr. Richardson is relevant within the meaning of Mississippi Rule of Evidence 401 as it is both (1) material or "of consequence" (relates to the injury element of the prima facie case), and (2) contains probative value as it makes the existence of her neck injury and scar "more probable."
¶ 34. Foster's counsel objected on the grounds that they requested a copy of all doctor reports during discovery and did not receive a copy of Dr. Richardson's report, had no knowledge of the report, and had not been advised during discovery that Haggerty had visited a plastic surgeon. Foster claimed admission of the report would prejudice his case because they did not have an opportunity to review the report prior to trial, interview and/or depose Dr. Richardson, and Dr. Richardson was not scheduled to testify at trial. The trial court sustained the objection and refused introduction of the report or any testimony concerning it.[4]
¶ 35. This Court has developed strict discovery rules to avoid trial by ambush and to insure each party had a reasonable time to prepare for trial. These discovery rules promote fair trials. Once discoverable material is requested, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring. Williams v. Dixie Elec. Power Ass'n, 514 So.2d 332, 335 (Miss. 1987) (citing Harris v. Gen. Host Corp., 503 So.2d 795, 797 (Miss.1986); Tolbert v. State, 441 So.2d 1374, 1375 (Miss.1983)). See also K-Mart Corp. v. Hardy ex rel. Hardy, 735 So.2d 975, 986(34) (Miss.1999); State Highway Comm'n of Miss. v. Jones, 649 So.2d 201, 203 (Miss.1995). As mentioned, Dr. Richardson's report was not disclosed prior to the point in trial when Haggerty sought to introduce it. This Court has stated "[t]he standard of review regarding admission of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." Floyd v. City of Crystal Springs, 749 So.2d 110, 113(12) (Miss.1999). "In regard to matters relating to discovery, *961 the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion." Dawkins v. Redd Pest Control Co., 607 So.2d 1232, 1235 (Miss.1992).
¶ 36. In Robert v. Colson, 729 So.2d 1243, 1246 (Miss.1999), this Court found that Rule 26 of the Mississippi Rules of Civil Procedure provides for seasonable supplementation of answers. This Court has held "seasonable supplementation" to mean soon after new information is known and far enough in advance of trial for the other side to prepare. Decisions addressing what constitutes a seasonable supplementation focus on the necessity to avoid unfair surprise at trial. See, e.g., Foster v. Noel, 715 So.2d 174, 182-83 (Miss.1998) (stating Rule 26 requires strict compliance to avoid unfair surprise); West v. Sanders Clinic for Women, P.A., 661 So.2d 714, 721 (Miss.1995) (affirming trial court's exclusion of certain expert testimony elicited at trial but not found in answers to interrogatories and stating seasonable supplementation requires supplementation when new information renders initial response inadequate); Motorola Communications & Elecs., Inc., v. Wilkerson, 555 So.2d 713, 717-18 (Miss.1989) (requiring seasonable disclosure give enough time to prepare for trial); Jones v. Hatchett, 504 So.2d 198 (Miss.1987) (stating purpose of our civil discovery procedures is to prevent trial by ambush).
¶ 37. The trial court inquired and Haggerty's counsel admitted that they had inadvertently failed to disclose to Foster's counsel any information regarding Haggerty's visit to Dr. Richardson, despite Foster's request for all information regarding doctor visits. The jury viewed Haggerty's scar and was able to determine for themselves the extent of permanent disfigurement. Therefore, we conclude that the trial judge did not abuse his discretion in refusing to allow the evidence regarding Dr. Richardson. Haggerty was not prejudiced by its exclusion; the jury still got the information she wished to convey through the doctor's report. Conversely, had the report been admitted into evidence, Foster would have been prejudiced. He would have been unable to depose or cross-examine Dr. Richardson regarding the contents of the report. In addition, though Foster did not object on this ground, the trial judge noted that Dr. Richardson would not be testifying at trial and any rendition of what he told Haggerty would have been hearsay.
¶ 38. This assignment is without merit.

IV. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING HAGGERTY'S OBJECTION TO FOSTER'S CLOSING ARGUMENT ON ACCIDENT RECONSTRUCTION.
¶ 39. In closing argument, Foster's counsel used paper cups to represent vehicles as he exhibited photographs C and D from Defendant's Exhibit 1. He argued that these photographs demonstrated that Haggerty had just entered the turn lane when the accident occurred because there was more damage to the left front side of her vehicle than to the right. He used the cups to represent the two automobiles and to show why the damage to the front left side of Haggerty's vehicle indicated that she was still in the process of entering the turn lane when the accident occurred. Therefore, he argued, Foster was not at fault because the accident was unavoidable. Haggerty's counsel objected, arguing that Foster's counsel is not an expert on accident reconstruction and since no expert testimony to that effect was produced at trial use of the cups was improper. The trial court overruled the objection and allowed the reconstruction argument.
*962 ¶ 40. Haggerty alleges this argument was improper. She cites Fielder v. Magnolia Beverage Co., 757 So.2d 925 (Miss. 1999), for the proposition that only a qualified accident reconstructionist may give opinions about the causation of an accident. She argues that without Foster's theory or evidence being proffered or supported by an accident reconstructionist expert (and it was not), Foster's counsel should not have been allowed to make such a reconstruction in closing argument.
¶ 41. Attorneys are allowed wide latitude in closing arguments. Holly v. State, 716 So.2d 979, 988 (Miss.1998); Wilcher v. State, 697 So.2d 1087, 1110 (Miss.1997). In addition, the "court should also be very careful in limiting free play of ideas, imagery, and personalities of counsel in their argument to [a] jury." Ahmad v. State, 603 So.2d 843, 846 (Miss.1992). Any alleged improper comment must be viewed in context, taking the circumstances of the case into consideration. Id. The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect, Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990), and a "trial judge has wide discretion in controlling the remarks and argument of attorneys." Gen. Motors Acceptance Corp. v. Layton, 353 So.2d 749, 754 (Miss. 1977).
¶ 42. The trial judge determined that the demonstration was permissible argument and noted that Haggerty's counsel could "counter that with logic...." In his closing argument, Haggerty's counsel did indeed argue his own theory of how the accident occurred, including why the front left fender of Haggerty's car was more damaged.[5] Given the wide latitude afforded attorneys in closing argument and the discretion which trial judge's are required to exercise, no abuse of that discretion occurred here. Moreover, Haggerty has not demonstrated that allowing the "reconstruction" caused her prejudice. She rebutted the defense's explanation of the damage to her vehicle with her own explanation and the jury was allowed to decide which was more plausible. Absent a showing of abuse of discretion and prejudice, this Court will defer to the trial court's judgment.
¶ 43. This assignment is without merit.

V. WHETHER THE TRIAL COURT ERRED IN DENYING HAGGERTY'S MOTION FOR A NEW TRIAL OR, ALTERNATIVELY, JUDGMENT NOT WITHSTANDING THE VERDICT.
¶ 44. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 720 (Miss.2001). If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, this Court is required to reverse and render. Id. at 720. However, if there is substantial evidence in support of the verdict, such that evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, this Court is required to affirm. Id. (citing Sperry-New Holland v. Prestage, 617 So.2d 248, 252 (Miss.1993)); Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997); Misso v. Oliver, 666 So.2d 1366, 1375-76 (Miss.1996); Am. Fire Protection, Inc. v. Lewis, 653 So.2d 1387, *963 1390-91 (Miss.1995). When conflicting testimony exists, the jury determines the weight and worth of the witnesses' testimony and credibility at trial. Wallace v. Thornton, 672 So.2d 724, 727 (Miss.1996). Reversal of a jury verdict is not warranted unless it is against the overwhelming weight of the evidence and credible testimony. Id.
¶ 45. The standard for granting a new trial is as follows: "On a motion for a new trial, the trial judge should set aside a jury's verdict when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence." McKinzie v. Coon, 656 So.2d 134, 138 (Miss.1995) (citing Wells Fargo Armored Serv. Corp. v. Turner, 543 So.2d 154, 158 (Miss.1989)). When determining whether a trial court erred in refusing a new trial, this Court reviews for abuse of discretion. Am. Fire Protection, Inc., 653 So.2d at 1390.
¶ 46. The circuit judge did not abuse his discretion in denying a judgment notwithstanding the verdict or a new trial. Viewing the evidence in the light most favorable to Foster, it cannot be said that the facts point so overwhelmingly in favor of Haggerty that reasonable men could not have arrived at a contrary verdict. Foster presented evidence supporting his theory that the accident was unavoidable. He submitted photographs of the damage to both vehicles and articulated a plausible theory of why the damage to both resulted as it did. This theory supported his version of how the accident occurred: Haggerty entered the turn lane after Foster began crossing it.
¶ 47. Though Haggerty also presented a theory of how the accident occurred, both theories were reasonable and the jury was entitled to decide which to credit. Wolfson testified that both he and Foster looked to make sure that no vehicles were coming and that Foster was driving carefully. Both Foster and Wolfson testified that the lane was clear. Though it might be argued that Wolfson is Foster's employee and therefore biased, this argument goes to the weight of his testimony and was obviously resolved by the jury in favor of believing him. Haggerty testified that she hit Foster's vehicle without having time to apply her brakes. She also testified that she did not see Foster until she hit him. Though she testified that she hit Foster head-on, the photographs introduced at trial indicate the collision may have occurred in a manner consistent with Foster's version.
¶ 48. In short, given the deference that is afforded a jury's verdict when, as here, the evidence presented at trial conflicts and is capable of more than one interpretation, it cannot be said that the trial court erred in refusing to grant a judgment notwithstanding the verdict or a new trial.
¶ 49. This assignment is without merit.

CONCLUSION
¶ 50. We find no merit to the errors that Haggerty assigns. The trial court's judgment is affirmed.
¶ 51. AFFIRMED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.
NOTES
[1] Ormon told the court that she had a problem with lawyers who advertise on television.
[2] Haggerty's doctor was not present at trial; however, his deposition was read into evidence.
[3] The substance of the doctor's testimony is not disclosed in the record; however, since Haggerty has not alleged in her brief that testimony regarding the doctor's interpretation of her MRI results was not before the jury, we assume that it was.
[4] The trial judge, Judge Kosta N. Vlahos, seemed very hostile to this Court throughout the trial, commenting derogatorily several times on decisions of this Court. His grounds for sustaining this objection were unclear. It appears from the record that he did so because the doctor's visit was not disclosed in discovery and, as an after thought, specifically speaking to this Court, on hearsay grounds because the doctor was not to be called to testify.
[5] Albeit, other than the photographs already in evidence, void of demonstrative aids.