# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-00566-SCT

*JOE EARL COLE a/k/a JOE COLE*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:                      02/23/2012
TRIAL JUDGE:                           HON. WILLIAM E. CHAPMAN, III
COURT FROM WHICH APPEALED:   RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        BOBBY T. VANCE
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                       BY:   SCOTT STUART
DISTRICT ATTORNEY:                 MICHAEL GUEST
NATURE OF THE CASE:                CRIMINAL - FELONY
DISPOSITION:                           AFFIRMED - 10/17/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.

### DICKINSON, PRESIDING JUSTICE, FOR THE COURT:

¶1.     Following his convictions for one count of sexual battery and three counts of gratification of lust, Joe Earl Cole argues on appeal that the trial court erroneously admitted hearsay and evidence of alleged prior unindicted acts of sexual misconduct with two of his minor granddaughters.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Joe Earl Cole's grandchildren regularly visited his home in Rankin County. Granddaughters H.M., M.M., K.H., M.H., and E.C. all alleged that their grandfather touched them inappropriately.  The Rankin County grand jury indicted Cole for one count of sexual

battery, involving the digital penetration of H.M., and three counts of gratification of lust for touching the vaginas of H.M., K.H., and E.C. The State did not seek an indictment for any conduct involving M.M. and M.H.

¶3. Prior to trial, Cole's counsel filed a motion in limine to exclude taped forensic interviews of the alleged victims as inadmissible hearsay and – because they contained references to uncharged allegations involving a different victim – as improper character evidence.

¶4. On the day of trial, the judge held a hearing on Cole's motion and determined that the tender-years exception to the rule against hearsay would overcome Cole's hearsay objection to the taped interviews. Cole's counsel also argued that admission of evidence of Cole's prior, unindicted acts of alleged sexual misconduct would violate Rule 404(b) of the Mississippi Rules of Evidence, which prohibits the use of other crimes or wrongful conduct – often referred to as "prior bad acts" – to prove the defendant's character, and to show that, when the defendant committed the acts for which he was indicted, he was acting in conformity with that character. Using the same argument, Cole also objected to any live testimony from alleged victim M.M., for whom no indictment was filed.

¶5. In response, the State argued that evidence of Cole's prior bad acts was admissible through Mississippi Rules of Evidence 404(b) and 403, and under this Court's opinion in *Gore v. State*.[1]

¶6. At the conclusion of the hearing, the trial judge found that the taped forensic interviews fell within the tender-years hearsay exception, but withheld ruling on the Rule

---

[1] *Gore v. State*, 37 So. 3d 1178 (Miss. 2010).

404(b) objection. Then, before opening statements, the trial judge found that the live testimony of H.M., M.M., K.H., E.C, and Amanda Haller – mother of K.H. and M.H. – regarding unindicted acts was admissible for all of the purposes argued by the State, and that the evidence was not substantially more prejudicial than probative.

¶7.   At trial, all of Cole's granddaughters except M.H. testified, alleging that most of the touching occurred when playing games, such as "find Kay Kay's head" and "horses" with their grandfather. When playing "find Kay Kay's head," the children would get under the covers on the bed, turn out the lights, and then try to find K.H.'s head. K.H., who was ten years old at the time of the trial, testified that Cole had touched her "cookie," another name for her vagina, on more than one occasion. She stated that, while playing this game, Cole touched her under her pants but on top of her underwear.

¶8.   To play "horses," they would pretend that the closet was a stable and one of the grandchildren was the hay in the stable for grandpa Joe (the horse) to eat. H.M. testified that while they were in the closet playing this game, Cole had inserted his finger into her vagina. She testified Cole had touched her several times either on top of or under her clothes. She also testified that Cole touched her while she was lying in a bed with several other people, including her grandmother. She testified that Cole had touched K.H. at least five times that she could remember.

¶9.   E.C. testified that Cole had touched her more than once, including instances while playing "find Kay Kay's head" and again when sitting on the couch watching TV. E.C. was eleven years old at the time of the trial.

3

¶10.    M.M., age nine at the time of trial, testified that Cole had touched her private parts while they were sitting on the couch watching television with her grandmother.  Cole also would come into M.M.'s bedroom while she was sleeping and touch her, she said.  When Cole touched her, it was always over her clothes, she testified.  She also stated that, when they would play "find Kay Kay's head," Cole would touch K.H. the most.

¶11.    M.H., who was three years old at the time, did not testify at trial.  Her mother, Amanda, testified that she had informed M.H. about "bad" and "good" touches while changing her diaper, at which point M.H. told her that Grandpa Joe had touched her there. The State introduced into evidence taped forensic interviews of all five granddaughters.  The interviewers testified as well.

¶12.    The trial judge instructed the jury that any acts involving M.M. and M.H. were unindicted acts, and were admissible only to show "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."  A jury found Cole guilty of all counts.  Cole received sentences of twenty years for  sexual battery and fifteen years for each count of gratification of lust, to run concurrently.  Cole appealed, arguing that the trial judge committed reversible error by allowing evidence of the acts involving M.M. and M.H., for which he was not indicted.

**STANDARD OF REVIEW**

¶13.    We must employ two standards of review while reviewing this case.  In determining whether a trial judge made an erroneous ruling on the admission or suppression of evidence, we employ an abuse-of-discretion standard.[2]  But even where we find error, we do not

_____

[2]*Haggerty v. Foster*, 838 So. 2d 948, 958 (Miss. 2002).

reverse unless "the error adversely affects a substantial right of the party."[3] Stated another way, trial judges enjoy "a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the Court will not reverse [the] ruling."[4]

## ANALYSIS

¶14. At trial, the State offered evidence, through live testimony and taped forensic interviews, of instances of Cole's sexual misconduct involving different victims -- M.M. and M.H. -- than those alleged in the indictment. Cole's attorney lodged two objections to the evidence, arguing first that the taped forensic interviews were hearsay, and also that the evidence of prior bad acts violated Rule 404(b), as inappropriate use of character evidence.

¶15. The trial judge conducted an extensive and thorough analysis of the children's conduct, demeanor, and lack of motive to lie in the taped interviews, and he found the evidence admissible, holding that the tender-years hearsay exception[5] applied, and that the prior bad acts were admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.[6] He also found that the evidence was not substantially more prejudicial than probative as required under Mississippi Rule of Evidence 403.

---

[3]*Id.* (quoting *In re Estate of Mask*, 703 So. 2d 852, 859 (Miss. 1997)).

[4]*Green v. State*, 89 So. 3d 543, 549 (Miss. 2012) (citations omitted).

[5]Miss. R. Evid. 803(25).

[6]Miss. R. Evid. 404(b).

5

¶16.    On appeal, Cole argues that the trial court erred by admitting this evidence under Rules 404(b) and 403, because no Rule 404(b) purpose was relevant to an element of the offenses charged, and because the evidence was substantially more prejudicial than probative.  He also argues that Rules 608 and 609 require all prior-bad-acts evidence to be prior convictions.

I.    *Whether Mississippi Rules of Evidence 608 and 609 require all prior-bad-acts evidence to be prior convictions.*

¶17.    As a preliminary matter, we reject Cole's argument that Rules 608 and 609 of the Mississippi Rules of Evidence limit all prior-bad-acts evidence to prior convictions.  Cole's contentions on this issue are wholly without merit, because Rules 608 and 609, by their terms, apply only to evidence used to impeach a witness.

¶18.    Rule 608 states in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.[7]

Rule 609 provides in its relevant part:

> For the purpose of attacking the character for truthfulness of a witness, (1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party; and (2) evidence that any witness

---

[7]Miss. R. Evid. 608(b).

has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.[8]

¶19.    Rule 608 addresses the admissibility of impeachment evidence regarding the character and conduct of a witness,[9] and Rule 609 pertains to the use of a witness's prior convictions for impeachment purposes.[10] The prosecution did not offer evidence of Cole's prior bad acts to attack the credibility of a witness. Cole did not testify, so Rules 608 and 609 were inapplicable to any evidence of his prior bad acts. We find that Rules 608 and 609 do not apply to the evidence in question and that this assignment of error is without merit.

II.    *Whether the trial court properly admitted the prior-bad-acts evidence pursuant to Mississippi Rules of Evidence 404(b) and 403.*

¶20.    Rules 404(b) and 403 govern the admissibility of instances of a defendant's prior bad conduct. With only three exceptions not applicable in this case, a person's prior bad acts are not admissible "for the purpose of proving that he acted in conformity therewith on a particular occasion."[11] Stated another way, the prosecutor in this case was prohibited from using Cole's prior bad acts to suggest to the jury that Cole had a bad character or bad character trait; and that he was acting in conformity with that bad character when he committed the acts for which he was on trial. Stated still another way, the prosecution may not introduce prior bad acts for the purpose of showing that the defendant has a propensity

---

[8]Miss. R. Evid. 609(a).

[9]Miss. R. Evid. 608(b).

[10]Miss. R. Evid. 609(a).

[11]Miss. R. Evid. 404(a).

to engage in such conduct, that is, because he had done things like this before, he probably did it this time.[12]

¶21.     Cole argues that his alleged prior bad acts were inadmissible because "no Rule 404(b) purpose was relevant to an element of the offenses charged." We disagree.

¶22.     Prior to **Derouen v. State**, this Court considered evidence of prior acts of sexual misconduct involving different victims to be so prejudicial that we held it was per se inadmissible, even for other purposes such as those listed in Mississippi Rule of Evidence 404(b).[13] Then, in **Derouen**, we rejected the notion that such evidence was per se inadmissable, finding instead that it could be admitted for alternative purposes, so long as the evidence was filtered through Rule 403, and was accompanied by an appropriate limiting instruction.[14] We now must analyze whether the trial judge committed manifest error in finding that the State had a noncharacter purpose for the evidence of Cole's prior bad acts.

¶23.     The trial judge instructed the jury that it could consider Cole's prior bad acts to show – among other things – the absence of mistake or accident. Where a defendant does not put mistake or accident at issue – or where a reasonable juror could not conclude from the evidence that the defendant's conduct was an accident or mistake – prior-bad-acts evidence may not be admitted for that purpose.[15]

---

[12]*Id.*; *see also* Miss. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.").

[13]**Derouen v. State**, 994 So. 2d 748, 756 (Miss. 2008) (citing **Lambert v. State**, 724 So. 2d 392, 394 (Miss. 1998) (citing **Mitchell v. State**, 539 So. 2d 1366, 1372 (Miss. 1989))).

[14]**Derouen**, 994 So. 2d at 756.

[15]**Mitchell v. State**, 110 So. 3d 732, 734 (Miss. 2013).

¶24. During the hearing on the admissibility of the evidence, the State argued – based on *Gore* – that the evidence of Cole's prior unindicted acts of sexual misconduct was admissible "for the purposes of proof of motive, as they say in *Gore*, to gratify his lust, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The State also pointed out that,

> from what we understand, the defendant is framing an accidental touch or, okay, or a mistake, he mistakenly touched. . . . It's in the statement from [KH]. She says she slapped the hand away, and he said, I didn't know I touched you.

Cole's counsel made no response to this assertion. We therefore cannot say that the trial judge abused his discretion in finding that the evidence of Cole's prior bad acts was admissible for the purpose of showing absence of accident or mistake.

¶25. As for the other purposes argued by the State, we find nothing in the record to suggest that Cole's motive, opportunity, intent, preparation, plan, or knowledge were at issue. These points never were raised or argued by either side. But where the State argues any alternative purpose for the evidence that does not violate Rule 404(b), the fact that other alternative purposes are argued is irrelevant, because Rule 404(b) requires only that the evidence not be offered for the purpose of showing that the defendant acted in conformity with his bad character.

¶26. Because the State articulated a legitimate, alternative evidentiary purpose for Cole's prior bad acts, we find the trial judge complied with this Court's requirements under

*Derouen*.[16]  We also find that the trial judge gave proper instructions on the purpose for which the jury could not consider the evidence.

¶27.   We take this opportunity to note that it would be a rare case in which every one of Rule 404's examples of alternative purposes applied.  We admonish prosecutors to refrain from offering prior-bad-acts evidence based on a rote recitation, such as:  "the State is not offering the prior bad acts as character evidence to show the defendant acted in conformity with his character, but the State is attempting to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Instead, prosecutors should clearly present the alternative purpose for the evidence, and trial judges should state the purpose for which the evidence is being admitted, and then provide the jury an appropriate limiting instruction.  Only then can we provide a fair review on appeal.

**CONCLUSION**

¶28.   We cannot say that the trial judge erred by admitting evidence of Cole's prior bad acts for the purpose of demonstrating the absence of accident or mistake.  Because the issues Cole presents on appeal are without merit, we affirm his conviction and sentence.

¶29.   **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNTS II, III, AND IV:  CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN (15) YEARS, EACH COUNT, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SENTENCES IN COUNTS II, III, AND IV SHALL RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT I.  THE EXECUTION OF THE LAST TEN (10) YEARS OF THE CONCURRENT SENTENCES IN COUNTS II, III, AND IV IS**

---

[16] *Derouen*, 994 So. 2d at 756.

**STAYED AND THAT PORTION OF THE SENTENCES IS SUSPENDED, WITH THE APPELLANT TO BE RELEASED, WITH CONDITIONS.**

**KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., LAMAR AND PIERCE, JJ.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶30.    The State argued that Cole's prior sexual misconduct against minors was admissible "for the purposes of proof of motive, as they say in ***Gore***, to gratify his lust, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."  The trial court then admitted the evidence "because of all the reasons argued by [the State] . . . ."

¶31.    I concur in result, observing that the trial court properly admitted evidence of the prior bad acts, for the reasons argued by the State.  This comports with Rule 404(b) and a series of cases in which various trial courts were affirmed on the same or nearly identical issue.[17]

¶32.    Four decisions[18] (three in the last year alone) since ***Derouen*** support the ruling of the trial court in the case *sub judice*.  In ***Derouen***, recognizing that our traditional evidentiary rules were not workable in sex-crimes-against-minors-cases, Mississippi joined the majority of the nation[19] and rectified a flawed precedent of prohibiting Rule 404(b) evidence, by

---

[17]***Derouen v. State***, 994 So. 2d 748 (Miss. 2008); ***Gore v. State***, 37 So. 3d 1178 (Miss. 2010); ***Green v. State***, 89 So. 3d 543 (Miss. 2012); ***Young v. State***, 106 So. 3d 775 (Miss. 2012); ***O'Connor v. State***, 120 So. 3d 390 (Miss. June 20, 2013).

[18]***Gore***, 37 So. 3d 1178; ***Green***, 89 So. 3d 543; ***Young***, 106 So. 3d 775; ***O'Connor***, 2013 WL 3067546.

[19]***Derouen***, 994 So. 2d at 753 (detailing the overwhelming weight of authority allowing evidence of prior sexual acts against children to be admissible) (citing ***Mitchell v. State***, 539 So. 2d 1366, 1374-75 (Miss. 1989) (Hawkins, P.J., dissenting), *overruled by ****Derouen***, 994 So. 2d 748.).

holding that evidence of a prior sexual act may be admitted into evidence under Rule 404(b). ***Derouen***, 994 So. 2d at 756 (Miss. 2008). Two years later in ***Gore***, this Court reaffirmed ***Derouen*** and clarified Rule 404(b) application. ***Gore***, 37 So. 3d at 1187. This Court in ***Gore*** held that evidence of prior sexual misconduct against minors is admissible under the motive purpose of Rule 404(b) if the misconduct demonstrates a similar *modus operandi.* In ***Green***, this Court further held that, where the prior sexual acts bear "overwhelming similarities" to the deviant conduct at issue, they are "undeniably" admissible under Rule 404(b) as both motive and as evidence of a "common plan, scheme, or system." ***Green***, 89 So. 3d at 550 n.19 (citation omitted). This Court recently reaffirmed each of these principles in both ***Young*** and ***O'Connor***. ***Young***, 106 So. 3d at 780; ***O'Connor***, 120 So. 3d at 396-98.

¶33. In short, "overwhelming similarities" between the prior sexual acts and the licentious sexual misconduct charged "undeniably bring the testimony of [the] other victims within the purview of admissibility under Rule 404(b)." ***Green***, 89 So. 3d at 550. Prior sexual acts also are admissible when the conduct is probative of "motive."[20] "Motive" is "an impulse, as an emotion, desire, or psychological need, acting as incitement to action." ***Green***, 89 So. 3d at 550 n.19 (citation omitted). Any evidence that tends to show a "'seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing juveniles,' is probative regarding *motive*." ***Young***, 106 So. 3d at 779 (quoting ***Green***, 89 So. 3d at 550-51 n.19) (emphasis original).

---

[20]***Gore***, 37 So. 3d at 1191; ***Green***, 89 So. 3d at 550; ***Young***, 106 So. 3d at 779; ***O'Connor***, 120 So. 3d at 397-98.

¶34. The jury is entitled to hear evidence of prior deviant sexual acts against minor children to corroborate whether motive exists if the "defendant's means of accomplishing these activities on past occasions bear substantial resemblance to each other and with the present offense." *Young*, 106 So. 3d at 780 (quoting *Gore*, 37 So. 3d at 1186). Finally, prior sexual acts which demonstrate "a *common plan*, *scheme*, or *system* . . . utilized . . . repeatedly to perpetrate separate but very similar crimes," such that the defendant "had a *system* that involved taking advantage of the [familial] relationship" are admissible. *Young*, 106 So. 3d at 780 (quoting *Green*, 89 So. 3d at 550 n.19) (emphasis added). Thus, I would find each of these were relevant to the case today, not just lack of mistake or accident.

¶35. In the case *sub judice*, the trial judge admitted the evidence of Cole's prior sexual acts in response to the State's argument that it was admissible for "proper 404(b) motives that tend to demonstrate the pedophilic sexual activities with young and developing female juveniles, defendant's means of accomplishing . . . the activities and substantial resemblance with each other," as well as to show absence of mistake.[21] The trial judge properly weighed the probative and prejudicial value of the evidence under Rule 403 before admitting the evidence.

¶36. The majority posits that a defendant, by not testifying, may preclude Rule 404(b) purposes (motive, opportunity, intent, preparation, plan, and knowledge) from consideration. Neither the facts before us, nor the law, offer support for such a finding. The defendant's silence does not preclude the use of Rule 404(b) evidence. *See Green*, 89 So. 3d 543; *Young*,

---

[21]Later in the trial, the State, once again, cited *Gore* in argument that the unindicted witness's testimony was admissible "for the purpose of proof of motive, as they say in *Gore*, to gratify his lust . . . ."

13

106 So. 3d 775. Neither of the defendants in *Green* or *Young* testified. *Green*, 89 So. 3d at 548; *Young*, 130 So. 3d at 777. The defense in *Green* was the same as Cole's defense – his attorney argued that he did not do it. In both cases, this Court affirmed the admission of evidence of the defendants' prior sexual acts against minor children under Rule 404(b) for the jury's consideration of motive and a common plan, scheme, or system. *Green*, 89 So. 3d at 550; *Young*, 106 So. 3d at 779-80.

¶37. A defendant's silence does not control the presentation of evidence and does not dictate the State's presentation of evidence (including otherwise-admissible prior bad acts that satisfy a Rule 404(b) purpose). *See Green*, 89 So. 3d 543; *Young*, 106 So. 3d 775. It is the defendant's similar and relevant misconduct offered by witnesses with knowledge that places a Rule 404(b) purpose at issue, not the defendant's silence. *Id.* First, the issues for jury consideration are controlled by the offense charged. Next, the State's evidence offered to establish or prove the charge controls the Rule 404(b) consideration. Finally, the defendant's defenses, if any, of the charge may place a Rule 404(b) purpose at issue. Stated differently, the conduct sets in motion whether the trial court will let the witness testify to prior bad conduct. If a Rule 404(b) purpose is met, along with relevance and similarity to the offense charged, the trial judge may allow the introduction of the prior sexual misconduct against a minor.

¶38. The majority also opines that no Rule 404(b) purpose (other than mistake or accident) was raised or argued by either side. The record reveals otherwise. Throughout the trial, the State, through its witnesses, fully developed motive, intent, and common plan, scheme, and system which creates the opportunity (games).

14

¶39.   H.M., M.M., K.H., and E.C. all testified to multiple instances (some indicted, some not) of Cole inappropriately rubbing their breast or vaginal area while they were pre-pubescent.[22]  The unindicted acts testified to substantially resembled the indicted acts, as defined, and applied in our sexual-misconduct-against-minor-children cases since *Derouen*. Each witness had fallen prey to Cole's criminally lewd acts on more than one occasion, evincing Cole's "uncontrollable desire" and a "psychological need" to "partake in pedophillic sexual activities." *Green*, 89 So. 3d at 550 n.19.  The young victims were mere babies when the deviant sexual assaults began, further evincing Cole's motive, intent, and opportunity of satisfying his "uncontrollable pedophilic desires."

¶40.   The young children also testified to a "common plan, scheme, and system" utilized by their deviant grandfather to sexually abuse them.  With the exception of a few isolated instances, each minor testified that Cole's modus operandi was the same, during the same two games – "horses" and "find Kay Kay's head."  He utilized the games to create an opportunity to rub upon and penetrate his own granddaughters' genitalia, repeatedly perpetrating his uncontrollable, pedophilic desires.  Cole planned and prepared his licentious assaults on the little girls through the use of those games.  He isolated his victims before playing "find Kay Kay's head," as Cole would lock the boys out of the room.  And then, when playing "horses," he would select only one little girl at a time to take into the closet. In closing, the State remarked, "[w]hat a great *plan* for him . . . the kids may have made it up, but, boy, did he take advantage of it." (Emphasis added.)  Cole's attorney conceded in

[22]The ages of the children were all under nine.  The record reveals that each girl was between the age of six and nine during Cole's sexual assaults.

15

closing that it "would make sense for a sexual predator" to use "find Kay Kay's head" as a scheme to molest children; but, since Cole did not invent the game, it could not be a scheme.

¶41. A "plan" is a "detailed scheme, program, or method worked out beforehand for the accomplishment of an object." *Webster's II New College Dictionary* 842 (2001). The testimony from the young girls demonstrated a "detailed scheme" and "method" to secretly and furtively accomplish his scheme of sexually assaulting his defenseless, minor grandchildren. A "scheme" is a "systematic plan of action." *Id.* at 987. "Horses" and "find Kay Kay's head" offered a systematic way to perpetrate and satisfy his pedophilic desires. A "system" is defined as a "method." *Id.* at 1119. Cole used the two games as a "method" to accomplish his lascivious touching. Finally, the State argued in closing that Cole used the two games as his "tool" to effectuate his "plan" of molesting the victims.

¶42. I detect no error when the learned trial judge[23] admitted the evidence under Rule 404(b), tracking this Court's earlier opinions. The State presented uncontradicted proof of Cole's *modus operandi*, including motive – touching ("pedophillic sexual activities") his granddaughters ("young and developing female juveniles") multiple times each ("uncontrollable desire"). The prior acts certainly had a "substantial resemblance" to the acts at issue (all victims were touched during "horses" or "find Kay Kay's head"). The evidence presented in this case qualifies as Rule 404(b) exceptions, as it has been defined in *Gore*, *Green*, *Young*, and *O'Connor*.

¶43. In short, this is the exact sort of evidence this Court has held admissible in *Derouen*, *Gore*, *Green*, *Young*, and *O'Connor*.

---

[23]The trial judge is the same trial judge as in *Gore*.

## Conclusion

¶44. I join in the disposition of the majority, but also would affirm the trial court for the reasons stated herein.

**WALLER, C.J., LAMAR AND PIERCE, JJ., JOIN THIS OPINION.**