# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01508-COA

| | |
|---|---|
| **BARRY HAYNES AND ROY COLLINS CONSTRUCTION COMPANY, INC.** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **DOROTHY BECKWARD AND SAMUEL BECKWARD** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2019 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL WAYNE BAXTER MICHAEL MADISON TAYLOR JR. |
| ATTORNEYS FOR APPELLEES: | BASKIN LOWBER JONES JOHN H. DANIELS III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 02/14/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     A Bolivar County Circuit Court jury found that Barry Haynes had negligently operated a vehicle, and Dorothy Beckward was awarded $346,500 in damages. On appeal, Haynes claims (1) the circuit court erred by excluding a portion of his testimony—specifically, that other vehicles had driven around him without incident before the wreck occurred, (2) the circuit court erred by denying his motion for a mistrial after Beckward mentioned liability insurance in front of the jury, and (3) the circuit court erred by denying his motion for a remittitur or new trial when the awards of damages for lost wages and future medical

expenses were not supported by the evidence. After review, we affirm in part and reverse in part the judgment entering the verdict and remand to the circuit court on the issue of damages.

## FACTS AND PROCEDURAL HISTORY

¶2. In January 2015, Dorothy Beckward filed a complaint in the Bolivar County Circuit Court against Barry Haynes for the alleged negligent operation of a vehicle. Specifically, Beckward alleged that on October 30, 2014, she was driving on Martin Luther King Drive in Bolivar County when Haynes backed a truck with an attached trailer out of Delta Health Center Drive into her vehicle. In May 2016, Beckward and her husband filed an amended complaint against Haynes, Roy Collins Construction Co. Inc., and John Does 1-5. The amended complaint included additional claims for alleged negligence, alleged loss of consortium and/or loss of household services, alleged negligent hiring or negligent entrustment, and respondent superior or vicarious liability.

¶3. At trial, Neuaviska Stidhum, a nurse at Delta Health Center, testified that she was outside during an afternoon break on October 30, 2014, when she saw a truck backing out from what was seemingly a construction road into Martin Luther King Drive. Simultaneously, she saw a car driving on Martin Luther King Drive toward the truck. According to Stidhum, the two vehicles "hit each other." When Stidhum went to assist the drivers, she recognized the driver of the car—Beckward—as a former coworker. Stidhum testified that she called 911 and then called Beckward's son at Beckward's request.

2

¶4.   On cross-examination, defense counsel asked Stidhum if she had seen any other vehicles on Martin Luther King Drive, and she responded, "Not at that time." Then defense counsel asked, "So you don't know if there [were] other [drivers] who had . . . seen the trailer in the road, and went around [it]?" Stidhum responded, "No. I didn't see that, but I did see [Haynes] back out in the middle of the road. So . . . another car couldn't make it down there if [Haynes] was backing out . . . ." Defense counsel then asked Stidhum if Beckward could have driven around Haynes' trailer, and she responded, "I can't answer that question . . . ." However, Stidhum later testified that she did not see anything in the other lane that would have prevented Beckward from doing so.

¶5.   Beckward's son testified that when he arrived at the scene it appeared that Haynes had backed the trailer into the passenger's side of his mother's car, and he heard Haynes ask his mother, "You didn't see me backing out?"

¶6.   Similarly, Beckward testified that Haynes backed the trailer into her car. Beckward testified that she did not see Haynes' trailer in the road or any vehicles in front of her before the wreck.[1] After the wreck, Beckward noticed pain in her neck, shoulder, and back, and that she had a headache. Additionally, she began feeling pain in her knee the next day. Beckward testified that an ambulance transported her to the emergency room, where she was prescribed Ibuprofen and discharged less than two hours later. Beckward testified that she

---

[1] When defense counsel pointed to skid marks in a photograph of the scene, Beckward testified that they could have been from another vehicle.

3

returned to her job for several days after the wreck.

¶7. Around that time, Beckward hired a lawyer and went to Dr. Michael Patterson with Patterson Chiropractic Clinic. Beckward explained that Dr. Patterson had previously treated her after she was involved in a car wreck in 2008, and she went to him again after the wreck in 2014.[2] During cross-examination, defense counsel asked Beckward, "So you went to see a lawyer before you went to the doctor [(chiropractor)] . . . right?" Beckward responded, "Yes. Because the man had told me that his insurance company would be in contact with me. So if someone [is] going to contact me from the insurance [company], I need a legal . . . representative." At that point, Haynes requested a mistrial seemingly based on a pretrial ruling prohibiting any mention of insurance.

¶8. However, the circuit court noted that defense counsel's line of questioning on cross-examination was designed to put in the jury's mind that Beckward did not go to the chiropractor until after she saw her lawyer. In other words, Beckward's lawyer sent her to the chiropractor who in turn exaggerated her medical condition for litigation purposes. The court believed that Beckward was backed into giving an explanation as to why she hired legal counsel and was simply clarifying her reason for doing so to the jury. The court further noted that it did not appear that Beckward desired to inform the jury about the existence of insurance. Although the circuit court denied Haynes' request for a mistrial, the court offered to read a curative instruction to the jury. But defense counsel refused the instruction.

---

[2] The 2008 wreck seemingly resulted in a settlement.

4

¶9. The trial continued, and Beckward acknowledged that she had considered retirement at one point. However, she testified that she changed her mind and decided she would work as long as possible. Around the time of the wreck, Bolivar Medical Center hired Beckward as a nurse, and she worked with accommodations until she stopped working in October 2017.

¶10. Beckward suggested that her physical limitations were the reasons she stopped working. Defense counsel seemingly suggested that much of Beckward's pain was from the 2008 wreck and an earlier arthritis diagnosis. However, Beckward indicated that her pain resulted from the 2014 wreck. Beckward testified that she had received treatment from various doctors after the wreck, and Dr. Reginald Rodges with Natural Pain Back Institute was still treating her twice per week for stability and pain management. According to Beckward, she planned to continue with that treatment.

¶11. Then Dr. Howard Katz's video deposition was played for the jury. During the deposition, Dr. Katz was tendered as an expert in physical rehabilitation and medical management of orthopedic injuries, rehabilitation, and independent medical examination. According to Dr. Katz, he was hired to conduct an independent medical examination of Beckward on October 7, 2016. He testified that Beckward was at maximum medical improvement at the time. Additionally, Dr. Katz prepared a report for Beckward's "Estimated Costs of Anticipated Future Medical Needs." According to Dr. Katz, Beckward had a life expectancy of 19.1 years as of November 22, 2016, and her future medical

5

expenses totaled $18,413.31 (assuming she did not require surgery).[3]

¶12.    Finally, Dr. George Carter testified as an expert in the field of economics. Dr. Carter had received Dr. Katz's report regarding Beckward's future medical expenses. Based on Dr. Katz's report and Beckward's life expectancy, Dr. Carter testified that the present value of Beckward's future medical expenses was $19,215. Additionally, with respect to Beckward's lost wages, Dr. Carter testified that Beckward had a 4.5-year work-life expectancy at the time of the wreck. He explained that Beckward earned approximately $40,000 per year before the wreck, and she could still perform work valued at approximately $31,000 per year. Accordingly, Beckward would have a loss of approximately $9,000 per year for 4.5 years, which he indicated totaled $38,734 at present value including entitlement benefits.

¶13.    After the plaintiff rested, Haynes testified on his own behalf. According to Haynes, on the day of the wreck, he was driving a truck with an attached trailer to pick up a dozer. He testified that when he turned onto the construction road, he quickly determined that he needed to back out. According to Haynes, he turned on his flashers and then noticed two cars.

¶14.    At that point, plaintiff's counsel objected based on a motion in limine requesting the circuit court to exclude testimony regarding the ability of other drivers to safely pass the trailer before the wreck occurred. In response, defense counsel argued that Haynes was

---

[3] Beckward's future medical needs included follow-up appointments; over-the-counter pain medications; training for home exercise programs and/or physical therapy; X-rays; CT-Scans; and MRIs.

entitled to tell the jury what he observed that day and why he did not completely back out of the construction road for a length of time—approximately ten minutes. Additionally, defense counsel argued that the testimony was admissible to prove that there was not a "dangerous condition." The circuit court stated:

> But actually . . . it's not really about you all wanting him to testify about what he saw. What you all want to do is say over and over again . . . three other people saw this and they safely went around. So why didn't you safely go around. I just think that that is the problem. [I] think that it is prejudicial to the plaintiff what the other drivers saw or what they did.

Defense counsel reiterated that it was important for Haynes to explain to the jury why the trailer was in the road for ten minutes. Then defense counsel stated:

> We would agree that we would not try to use this evidence about other cars [driving] by to argue that because they [drove] by and saw [Haynes] . . . therefore [Beckward] should have. But we - - I would agree to that but it's admissible for another reason. And that is to explain why he sat where he sat for the length of time he sat [and that is] because other traffic was coming by. We're entitled to explain why he was there for the length of time he was there . . . .

Then the following colloquy occurred:

> COURT: So I understand what you're saying. If he's going to say whatever about the 10 minutes, traffic was coming through and I was letting the traffic pass that's one thing. But to say driver number one went through, passed through safely, no incidents.
>
> DEFENSE: No. No.
>
> COURT: Driver number two - -
>
> DEFENSE: No.

Finally, defense counsel stated:

7

Judge, here's the thing. We won't even - - if they open the door, if they cross him and say, you were there 10 minutes, that's opening the door for an explanation. We get to then explain why was he there . . . it was because cars were coming . . . .

Ultimately, the circuit court held that Haynes could testify about the flow of traffic and explain why the trailer was in the road for a certain length of time if the plaintiff opened the door on cross-examination. However, the court held that Haynes could not testify that because other drivers had safely passed the trailer Beckward should have as well.

¶15. After the court's ruling, Haynes testified that he was waiting for traffic to clear when Beckward hit the trailer. Haynes testified that he got out of the truck and asked Beckward, "You couldn't see that . . . trailer . . . ?" and she responded by saying that he backed out in front of her. Haynes indicated that he did not back up in front of Beckward and was stationary when Beckward hit the trailer.

¶16. Ultimately, the jury found that Haynes had been negligent in the operation of a vehicle and awarded the following damages to Beckward: $75,000 for medical expenses; $70,000 for future medical expenses; $100,000 for past, present, and future lost wages; and $250,000 for past, present, and future pain, suffering, disability, and loss of enjoyment of life. The jury then assessed 30 percent fault to Beckward and 70 percent fault to Haynes. The circuit court reduced the total amount of damages by 30 percent and held "Roy Collins Construction Co., Inc., and Barry Haynes jointly and severally liable in the sum of $346,500 together with court costs and interest in the amount of eight percent per annum."

¶17. Subsequently, Haynes filed a motion for remittitur or a new trial or, in the alternative,

8

judgment notwithstanding the verdict or to alter or amend the judgment. Haynes claimed (1) the circuit court erred by excluding his testimony that other vehicles drove around the trailer without incident, (2) the circuit court erred by denying his request for a mistrial after Beckward mentioned insurance in front of the jury, and (3) he was entitled to a remittitur or new trial because the awards of damages for lost wages and future medical expenses were not supported by the evidence. After a hearing, the circuit court denied the motion, and Haynes appealed.[4]

## DISCUSSION

**I.     Whether the circuit court erred by excluding a portion of Hayne's testimony.**

¶18.    Haynes claims the circuit court erred by excluding his testimony that he saw at least three other motorists drive around the trailer before the wreck with Beckward occurred. "We review the admission or exclusion of evidence for an abuse of discretion." *In re Walker*, 331 So. 3d 553, 559 (¶22) (Miss. Ct. App. 2021) (citing *Sewell v. State*, 721 So. 2d 129, 138 (¶50) (Miss. 1998)).

¶19.    Before trial, Beckward apparently submitted a motion in limine to preclude Haynes from testifying about the ability of other drivers to safely pass the trailer before the wreck occurred. At trial plaintiff's counsel objected based on the motion in limine when Haynes testified that he saw two cars on the roadway. In response, defense counsel argued that

---

[4] Beckward did not seek an additur or file a cross-claim on damages.

Haynes was entitled to tell the jury what he observed that day and why he did not completely back out of the construction road for a length of time—approximately ten minutes. Additionally, defense counsel argued that the testimony was admissible to prove that there was not a "dangerous condition." The circuit court believed that "it [was] not really about [the defense] wanting [Haynes] . . . to testify about what he saw"; rather, the court felt that the defense wanted to repeatedly say "three other people saw this and they safely went around. So why didn't [Beckward] safely go around." Defense counsel reiterated that it was important for Haynes to explain to the jury why the trailer was in the road for ten minutes. Then defense counsel stated:

> We would agree that we would not try to use this evidence about other cars [driving] by to argue that because they [drove] by and saw [Haynes] . . . therefore [Beckward] should have. But we - - I would agree to that but it's admissible for another reason. And that is to explain why he sat where he sat for the length of time he sat [and that is] because other traffic was coming by. We're entitled to explain why he was there for the length of time he was there . . . .

Defense counsel further suggested that the defense would not bring up the reason why Haynes did not completely back out of the construction road for ten minutes unless the plaintiff opened the door on cross-examination. Ultimately, the court held that Haynes could testify about the flow of traffic, and he could explain why he did not completely back out of the construction road for a certain length of time if the plaintiff opened the door on cross-examination.

¶20. On appeal, Beckward asserts that Haynes failed to preserve this issue for appeal.

10

Specifically, Beckward states that Haynes "should not be allowed, on appeal, to urge that evidence should have been admitted for the very purpose that they agreed it wouldn't be [at trial]." In response, Haynes agrees that the testimony was not admissible for the purpose of imputing other drivers' actions to Beckward, but Haynes asserts that his position at trial was that the testimony was admissible to prove lack of a "dangerous condition."

¶21.   It is true that Haynes initially argued at trial that the testimony was admissible to prove that there was not a "dangerous condition." He also argued that he was entitled to tell the jury what he observed that day and why he did not completely back out of the construction road for a length of time—approximately ten minutes. Although Haynes presented the "dangerous condition" argument to the court, the court believed that the defense wanted to repeatedly tell the jury that "three other people saw this and they safely went around. So why didn't [Beckward] safely go around." After additional argument, Haynes effectively stipulated as to how the testimony would be presented to the jury. Haynes seemingly agreed that the testimony would only be used to explain why he did not immediately back out of the construction road and suggested that it would only be brought up if the plaintiff opened the door on cross-examination. Because Haynes abandoned his argument that the testimony was admissible to prove lack of a "dangerous condition" when he effectively stipulated as to how the testimony would be used at trial, we agree that Haynes failed to preserve this issue for appeal.

¶22.   However, even if Haynes had properly preserved his claim for appeal, we cannot say

11

that the circuit court abused its discretion by excluding the testimony. Haynes cites *Buford v. Riverboat Corp. of Mississippi-Vicksburg*, 756 So. 2d 765 (Miss. 2000), in support of his argument. In *Buford*—a premises liability case—a patron sued a casino after slipping and falling in the parking lot. *Id*. 766 at (¶¶1-2). Our supreme court noted that "[a]s for evidence of a lack of accidents," despite many courts' tendency to exclude this evidence,

> a large number of cases recognize that lack of other accidents may be admissible to show (1) absence of the defect or condition allege[d], (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger.

*Id*. at 769 (¶21). Further, the supreme court cited the following quote from the Delaware Supreme Court:

> A party who wishes to offer evidence as to the absence of other accidents must show that, during the period in question, the physical circumstances prior to the accident were reasonably comparable to those in issue. Additionally, it must be shown that the person offering the testimony is one who would, in the ordinary course of events, have personal knowledge of the condition or that he is the person to whom reports as to accidents would ordinarily be made.

*Id*. at 770 (¶23) (quoting *Pippin v. Ranch House S. Inc.*, 366 A.2d 1180, 1183 (Del. 1976)); *see also Lawler v. Skelton*, 241 Miss. 274, 130 So. 2d 565, 569 (1961). Because the supreme court in *Buford* reversed for other reasons, it did not have to decide whether the "no falls" evidence also mandated reversal. *Id*. at (¶25).

¶23. As discussed, Haynes argues that the testimony in this case was admissible to show that the trailer did not create a dangerous condition. Although this was not a premises-liability case—like *Buford*—the record does not reflect that Haynes showed that the other

12

drivers were presented with similar circumstances.

¶24. Furthermore, we find that any error in excluding the testimony was harmless. "Under the harmless error doctrine, 'if the weight of the evidence is sufficient to outweigh any harm done by the error then reversal is not warranted.'" *Murray v. Gray*, 321 So. 3d 1166, 1182 (¶47) (Miss. Ct. App. 2020) (quoting *Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 779 (¶42) (Miss. 2013)). "We will not reverse a judgment entered on a jury verdict because evidence was . . . excluded in error unless the error actually prejudiced a party or adversely affected a party's substantial rights." *Id*. at 1181-82 (¶47). During his testimony, Haynes indicated that he was waiting for traffic to clear when Beckward hit the trailer. Additionally, Beckward testified that she did not see any vehicles in front of her. The jury could have easily inferred that other vehicles safely passed the trailer before the wreck with Beckward occurred. We note that the jury apportioned fault in this case—30 percent to Beckward and 70 percent to Haynes. After review, we find that Haynes failed to preserve this issue for appeal. But even if Haynes had preserved the issue for appeal, we find no reversible error.

## II. Whether the circuit court erred by denying Haynes' request for a mistrial.

¶25. Haynes claims that the circuit court erred by denying his request for a mistrial after Beckward violated the court's ruling prohibiting her from mentioning insurance.

¶26. Under our rules, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." MRE 411. However, the evidence may be admitted "for another purpose." *Id*. Our supreme

13

court has stated that "the likelihood of the defendant being prejudiced by the mention of insurance has been diminished in recent years because most jurors, and other citizens, share the common knowledge regarding coverage of liability insurance." *Coho Res. Inc. v. McCarthy*, 829 So. 2d 1, 25 (¶80) (Miss. 2002) (quoting *Meena v. Wilburn*, 603 So. 2d 866, 873-74 (Miss. 1992)). "Such awareness has meant that the 'mere mentioning of insurance in a trial is not cause for mistrial in all cases.'" *Id*.

¶27. Before trial, Haynes filed a motion in limine to prevent Beckward from mentioning insurance at trial, which the circuit court seemingly granted. During cross-examination, defense counsel asked Beckward, "So you went to see a lawyer before you went to the doctor [(chiropractor)] . . . right?" Beckward responded, "Yes. Because the man had told me that his insurance company would be in contact with me. So if someone [is] going to contact me from the insurance [company], I need a legal . . . representative." At that point, Haynes moved for a mistrial.

¶28. However, the circuit court noted that defense counsel's line of questioning was designed to put in the jury's mind that Beckward did not go to the chiropractor until after she saw her lawyer. In other words, Beckward's lawyer sent her to the chiropractor who in turn exaggerated her medical condition for litigation purposes.[5] The circuit court believed that Beckward was backed into giving an explanation as to why she hired legal counsel and was

_____

[5] Defense counsel repeatedly referred to the chiropractor as the "lawsuit chiropractor."

14

simply clarifying her reason for doing so to the jury. The court further noted that it did not appear that Beckward desired to inform the jury about the existence of insurance. We agree.

¶29. Evidence of insurance was not admitted in this case "to prove whether [Haynes] acted negligently or otherwise wrongfully." MRE 411. Rather, it was admitted to clarify why Beckward hired legal counsel before seeing a chiropractor. The comments to Rule 411 state that if evidence of insurance is "offered for a purpose not barred by the Rule, its admissibility remains governed by the general principles of Rules 402, 403, 801, etc." MRE 411 cmt.[6] Our supreme court has held that "[t]he trial judge 'is in the most advantageous position to correctly rule whether prejudice, or the lack of it, has emanated from the comment of a witness.'" *Coho Res. Inc.*, 829 So. 2d at 25 (¶80) (quoting *Meena*, 603 So. 2d at 873-74). Although the circuit court denied the request for a mistrial, the court offered to read a curative instruction to the jury. However, defense counsel refused such an instruction. After review, we find that the circuit court did not abuse its discretion in denying Haynes' request for a mistrial.

### III. Whether the circuit court erred by denying Haynes' motion for remittitur or a new trial.

¶30. Finally, Haynes seemingly claims the circuit court erred by denying his motion for remittitur or a new trial because the jury's awards of damages for future medical expenses and lost wages were not supported by the evidence.

---

[6] Defense counsel mentioned hearsay; however, we note that an opposing party's statement may not be hearsay under certain circumstances. MRE 801(d)(2).

¶31. With respect to a motion for a new trial, this Court and our supreme court have stated:

> The grant or denial of a motion for a new trial is and always has been a matter largely within the sound discretion of the trial judge. The credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion.

*Anderson v. Salaam*, 283 So. 3d 302, 307-08 (¶17) (Miss. Ct. App. 2019) (quoting *Green v. Grant*, 641 So. 2d 1203, 1207-08 (Miss. 1994)).

¶32. Additionally, a court's power to impose a remittitur derives from Mississippi Code Annotated section 11-1-55 (Rev. 2019), which states:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

"Thus, [a remittitur] may be awarded: (1) if the court finds that the jury was influenced by bias, prejudice, or passion or (2) if the damages were contrary to the overwhelming weight of credible evidence." *Stockett v. Classic Manor Builders Inc.*, 226 So. 3d 620, 623 (¶9) (Miss. Ct. App. 2017) (quoting *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 944

16

(Miss. 1992)).[7]

¶33.    "The standard of review for trial court decisions regarding a remittitur is the abuse of discretion standard." *Parsons v. Walters*, 297 So. 3d 250, 257 (¶21) (Miss. 2020) (quoting *U.S. Fid. and Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 969 (¶43) (Miss. 2008)). "Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Stockett*, 226 So. 3d at 624 (¶12) (quoting *Rodgers*, 611 So. 2d at 945).

### A.    Future Medical Expenses

¶34.    At trial, Dr. Carter testified that the present value of Beckward's future medical expenses was $19,215.  Additionally, during closing arguments, plaintiff's counsel stated, "You heard from Dr. Katz about her future medical expenses about the amount that those future medical expenses would cost reduced to current value by [Dr.] Carter and treating with specialist, ongoing treatment, $19,215."

¶35.    While Haynes argues that the jury should not have awarded $70,000 in future medical expenses based on the evidence presented at trial, Beckward seemingly suggests that the jury could have awarded *more* than $70,000.  According to Beckward, she presented evidence to the jury that she was still being treated by Dr. Rodges twice per week. She further asserts that

_____

[7] In his appellate brief, Haynes asserts that his argument "has nothing to do with the weight of the evidence."

17

each visit cost $268 or $270, and she would therefore incur more than $529,000 in expenses for the remainder of her expected life.

¶36. Although Beckward testified that she was still seeing Dr. Rodges twice per week at the time of trial and that she planned to continue with treatment, "it is well established law that a plaintiff is clearly incompetent to testify regarding his or her own medical prognosis *and treatment*." *Haggerty v. Foster*, 838 So. 2d 948, 959 (¶31) (Miss. 2002) (emphasis added) (citing *Graves v. Graves*, 531 So. 2d 817, 822 (Miss. 1988)). Additionally, this Court has held, "To be recoverable, damages must be shown with reasonable certainty and not left to speculation and conjecture." *Wackenhut Corp. v. Fortune*, 87 So. 3d 1083, 1091 (¶22) (Miss. Ct. App. 2012) (quoting *Flight Line Inc. v. Tanksley*, 608 So. 2d 1149, 1164 (Miss. 1992)).

¶37. The dissent recognizes these cases but asserts that Beckward "did not offer a medical diagnosis or prognosis." However, Beckward's testimony that she planned to continue treatment with Dr. Rodges implied that seeing Dr. Rodges would advance her own recovery. Dr. Rodges did not testify at trial nor did Beckward's expert testify as to the reasonableness or necessity for this continued treatment. Additionally, there was no testimony that established how long Beckward would need to continue with her self-proclaimed course of treatment. The dissent does not seem to dispute that Beckward testified about her own *treatment*, which this Court and our supreme court have said that a plaintiff is "clearly incompetent" to do. The only basis for the jury's award of damages was Beckward's own

18

testimony, and any award of damages would have been based on conjecture.

¶38.   For these reasons, we find that the circuit court abused its discretion when it denied Haynes' motion for remittitur or a new trial.

## B.   Lost Wages

¶39.   Additionally, Dr. Carter testified that Beckward had a 4.5-year work-life expectancy at the time of the wreck. He explained that Beckward earned approximately $40,000 per year before the wreck, and she could still perform work valued at approximately $31,000 per year. Accordingly, Beckward would have a loss of approximately $9,000 per year for four and one-half years, which he indicated totaled $38,734 at present value, including entitlement benefits.

¶40.   Although Haynes argues that the jury should not have awarded $100,000 in lost wages based on the evidence presented at trial, Beckward argues that she intended to work well beyond her statistical work-life expectancy but eventually had to stop working completely after the wreck. Therefore, she asserts that the jury could have awarded more than $420,000 in lost wages.

¶41.   Our supreme court has held, "Work-life expectancy cannot be assumed, but must be based on an objective standard." *Rebelwood Apartments RP, LP v. English*, 48 So. 3d 483, 497 (¶59) (Miss. 2010).

> Courts are not prophets and juries are not seers. In making awards to compensate injured plaintiffs . . . for loss of future earnings, however, these fact-finders must attempt, in some degree, to gauge future events. Absolute certainty is by the very nature of the effort impossible. It is also impossible to

19

take into account every bit of potentially relevant evidence concerning the tomorrows of a lifetime. The approach we adopt attempts to assure plaintiffs a fair measure of damages, to give defendants a reasonable adjustment for reducing future losses to present value, and to avoid making trials even more complex and their results even more uncertain. It is the product of a balancing of competing values. Ultimately, however, that is the root of all justice.

*Id*. at 497 (¶60) (quoting *Culver v. Slater Boat Co.*, 722 F.2d 114, 123 (5th Cir. 1983)). Here, Beckward did not present any evidence that she would have been able to work beyond her work-life expectancy had the wreck not occurred.

¶42. The dissent would affirm the award of lost wages relying on the testimony that Beckward's work-life expectancy was four and one-half years and her own testimony that she would work as long as she could. But again, there was no evidence presented that she could work *beyond* her work-life expectancy. To find that Beckward's testimony meant that she could or would work beyond four and one-half years requires speculation.[8] For these reasons, we find that the circuit court abused its discretion when it denied Haynes' motion for remittitur or a new trial.

**CONCLUSION**

¶43. After review, we affirm in part the judgment entering the verdict. However, we reverse in part and remand on the issue of damages to the circuit court. On remand, we instruct the circuit court to grant a remittitur, making the damages award $268,064.30. If

---

[8] Beckward had already planned to retire once before the accident. She testified that she had considered retiring at one point but changed her mind after staying home for approximately three weeks.

Beckward and Haynes do not agree to remittitur, then the court should proceed with a new trial on lost wages and future medical expenses. *See Ground Control LLC v. Capsco Indus. Inc.*, 214 So. 3d 232, 249 (¶73) (Miss. 2017).

¶44. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.; McDONALD, J., JOINS IN PART.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶45. I agree with the majority that the trial court did not err in excluding a portion of Haynes's testimony or in denying the motion for a mistrial. However, I respectfully disagree with the majority that the trial court abused its discretion in not granting a remittitur as to the jury verdict on future medical expenses and lost wages. The jury award for future medical expenses and lost wages was sufficiently supported by the evidence and should not be disturbed. Accordingly, I dissent.

### A. Future Medical Expenses

¶46. Beckward testified at trial that following the car accident, she began seeing Dr. Rodges, a chiropractor: "It first started out seeing him every Monday, Wednesday, and Friday. I did that for a year or so I think. And then he dropped it down to like twice a week and then sometimes he will go back up to two or three times a week. It's according to how

21

my gait is." When asked what benefits she received from the treatment with Dr. Rodges, Beckward explained, "Pain a little less and my gait is more steady and I can hold my head up much better." Beckward testified she planned to continue treatment with Dr. Rodges two times per week.

¶47. Beckward also played the video deposition of Dr. Howard Katz, who explained the nature and extent of Beckward's future medical needs. According to Dr. Katz, Beckward's future medical expenses totaled $18,413.31. Based on this report, Dr. George Carter, an economist, testified at trial that the present value of Beckward's medical needs was $19,215.

¶48. The majority concludes that any award of damages for future medical expenses "would have been based on conjecture" because Beckward did not present expert testimony at trial "as to the reasonableness or necessity for continued treatment" with Dr. Rodges. *See also Wackenhut Corp. v. Fortune*, 87 So. 3d 1083, 1091 (¶22) (Miss. Ct. App. 2012) (quoting *Flight Line Inc. v. Tanksley*, 608 So. 2d 1149, 1164 (Miss. 1992)). The majority relies on the supreme court's holding in *Haggerty v. Foster*, 838 So. 2d 948, 959 (¶31) (Miss. 2002) (citing *Graves v. Graves*, 531 So. 2d 817, 822 (Miss. 1988)).

¶49. In *Haggerty*, 838 So. 2d at 952 (¶1), the plaintiff brought a civil action against a driver after a vehicle collision. At trial, Haggerty was asked to give her impression "about the MRI results." *Id.* at 959 (¶31). Defense counsel objected, and the judge sustained the objection. *Id.* On appeal, Haggerty argued she should have been permitted to "give her impression about her injuries." *Id.* The Mississippi Supreme Court held, "it is well established law that

22

a plaintiff is clearly incompetent to testify regarding his or her own medical prognosis and treatment." *Id.* (citing *Graves*, 531 So. 2d at 822). Further, the supreme court held that "[a]ny impression of the MRI was outside the understanding of Haggerty and her knowledge of it was only gleaned through conversations with her doctor." *Id.* at (¶32). Further, "[a]lthough she was not allowed to testify regarding the MRI, Haggerty was not denied an opportunity to describe her physical problems, pain, and suffering to the jury." *Id.* The majority also cites *Graves*, 531 So. 2d at 822, holding that an injured party was incompetent to give hearsay testimony as to his doctor's "prognosis and planned course of treatment" as to whether he needed further surgeries on his injured eye.

¶50.   *Haggerty* and *Graves* are plainly distinguishable from the case at hand. *Haggerty* involved a layperson seeking to testify as to her MRI results, testimony that clearly required specialized knowledge. *See Haggerty*, 838 So. 2d at 959 (¶31). *Graves* involved a plaintiff attempting to explain the need for future eye surgeries. *Graves*, 531 So. 2d at 822. Here, based on what her doctor had told her, Beckward simply testified as to how often she planned to see her chiropractor and how the visits make her feel better. She did not offer a medical diagnosis or prognosis. Beckward's testimony was based on her own perception and experience, not technical or scientific knowledge. Beckward was qualified to testify as to the doctor appointments she had attended and planned to attend in the future. Beckward did not offer any testimony based on scientific, technical, or specialized knowledge. She testified as to how her chiropractor made her feel better, how often she had appointments,

23

and how she planned to continue seeing him twice a week.

¶51. The majority holds that "the circuit court abused its discretion" when it denied Haynes's motion for remittitur or a new trial. "The standard of review for the denial of a remittitur is abuse of discretion." *Entergy Miss. Inc. v. Bolden*, 854 So. 2d 1051, 1058 (¶20) (Miss. 2003). "There are no fixed standards as to when an additur or remittitur is proper." *Id*. However, this Court "will not disturb a jury's award of damages unless its size, in comparison to the actual amount of damage, shocks the conscience." *Id.* "The jury's verdict [in a civil case] is a finding of fact." *Edwards v. Ellis*, 478 So. 2d 282, 289 (Miss. 1985) (quoting *City of Jackson v. Locklar*, 431 So. 2d 475, 481 (Miss. 1983)). "Even if we think the amount awarded in the verdict is liberal, we are not allowed to supplant our judgment for that of the jury unless we conclude that there was insufficient evidence to support the award of damages or that the verdict was the product of bias, passion, or prejudice." *Gen. Motors Corp. v. Pegues*, 738 So. 2d 746, 755 (¶25) (Miss. Ct. App. 1998) (citing *S. Cent. Bell Tel. Co. v. Parker*, 491 So. 2d 212, 217 (Miss. 1986)). The Mississippi Supreme Court has repeatedly stated, "Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found." *E.g., Bell v. City of Bay St. Louis*, 467 So. 2d 657, 660 (Miss. 1985). "Judges cannot sit as jurors, and the question before them is never what they would have done sitting as a juror but whether, considering

24

the evidence in the light most favorable to the non-moving party, together with all reasonable inferences which may be drawn therefrom, the court should disturb the jury verdict." *Holmes Cnty. Bank & Tr. Co. v. Staple Cotton Co-op. Ass'n*, 495 So. 2d 447, 451 (Miss. 1986).

¶52.    Under the guidance above, this Court and the Mississippi Supreme Court have repeatedly deferred to the jury and upheld jury verdicts substantially larger than the actual damages presented at this trial.  In *Woods v. Nichols*, 416 So. 2d 659, 672 (Miss. 1982), the Supreme Court affirmed a $550,000 jury verdict, which was over ten times more than the approximately $53,000 in actual damages.  In *Pegues*, 738 So. 2d at 755 (¶32), this Court upheld the award of $3,529,600, which was over seventeen times larger than the  actual damages of "less than $200,000."  In *Hankins Lumber Co. v. Moore*, 774 So. 2d 459, 466-67 (¶20) (Miss. Ct. App. 2000), this Court upheld the jury award of $80,000 as not excessive although the plaintiff had only "$7,156.03 in medical expenses and $1,600 in damage to his truck as a result of the accident."  This Court held, "It is the province of the jury to award the amount of damages, and the award will not be set aside unless it is so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous. We do not find this to be the case, in light of the evidence as a whole, including the medical testimony that Moore's back problems could recur." *Id.* (citation and internal quotation marks omitted).  In *McNeil v. Bourn*, 721 So. 2d 663, 669-71 (¶30) (Miss. Ct. App. 1998), this Court upheld a judgment for $121,000 based solely on the plaintiff's testimony and submitted medical bills totaling $22,337.11, stating, "While the

verdict rendered by the jury in this case may not have been the one that this Court would have rendered, it is not so excessive so as to shock the conscience of this Court or one that no impartial hypothetical juror could have rendered." *Id.* at 671 (¶31).

¶53.   Under the cases cited above, the jury award of $70,000 for future medical expenses was a little more than three times the actual damages proved.  That is not so excessive as to shock the conscience.  It was obvious from her testimony that her injuries could require future  medical expenses.  The jury heard the testimony, and the jury is the final arbiter of total damages.  While the verdict in the present case may not be the amount the majority would have awarded, it is error to supplant our judgment for that of the jury.  *See Pegues*, 738 So. at 755 (¶25).

### B.    Lost Wages

¶54.   The majority also concludes that the trial court "abused its discretion when it denied Haynes's motion for remittitur or a new trial" as to the issue of lost wages.  The majority states that "Beckward did not present any evidence that she would have been able to work beyond her work-life expectancy had the wreck not occurred."

¶55.   At trial, Dr. Carter testified that Beckward, who was sixty-three years old at the time of the wreck, had a 4.5-year work-life expectancy at the time of the wreck.  Dr. Carter explained, "The first is her lost wages, $9,000 a year that she has as a loss.  The difference between the 40 she would have earned and the 31 she can earn.  That 9,000 over the four and a half years discounted to present value is $35,783."  At trial, Beckward testified, "I didn't

like staying at home after I stayed there for about three weeks I just said I was going to work as long as I could. One of the nurses I used to work with worked until she got 78. She did weekends." The jury awarded Beckward $100,000 in lost wages.

¶56. In *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP, 2017 WL 2929446, at *1 (S.D. Miss. July 7, 2017) (quoting *Potts v. MDOT*, 3 So. 3d 810, 813 (¶11) (Miss. Ct. App. 2009)), the United States District Court held that damages for "diminished earning capacity" must be supported by "satisfactory proof." The court stated, "Proof with certainty or mathematical exactness is not required, nor need the proof be clear and indubitable; but such damages must be established by substantial evidence and cannot be left to mere conjecture." *Id.* (quoting *Potts*, 3 So. 3d at 813 (¶11)). The court further explained:

> Mississippi law does not require plaintiffs to use expert testimony to prove a loss of wage-earning capacity. *Coleman v. Swift Transp. Co. of Ariz., LLC*, No. 3:13-CV-3-DMB-SAA, 2014 U.S. Dist. LEXIS 96538, at *19, 2014 WL 3533322 (N.D. Miss. July 16, 2014). Rather, the jury is required to "measure any damages for loss of wage earning capacity by looking at the plaintiffs' health, physical ability, age, and earning power before the accident as well as the effect of their injuries on earning power." *Id.* at 21. Therefore, medical records, a medical expert's testimony as to the plaintiff's injuries (rather than as to her earning capacity), and **the plaintiff's own testimony as to the effect the injuries had on her ability to work** may be sufficient to support an award of damages for lost earning capacity.

(Emphasis added).

¶57. The majority holds the jury's award for lost wages was not based on sufficient evidence. Beckward testified that she planned to continue working as long as she could. Dr. Carter testified as to 4.5 years of lost wages, which amounted to $38,734. Under the

27

guidance the United States District Court provided in *Walker*, Beckward's testimony on her ability to work was certainly admissible evidence. The jury was within its right to weigh the evidence and give credence to the plaintiff's testimony of plans to work past her work-life expectancy. This Court does not sit as a juror, and in reviewing the weight of the evidence, "our capacity for such is limited in that we have only a cold, printed record to review." *Little v. State*, 233 So. 3d 288, 291 (¶15) (Miss. 2017). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.* at 289 (¶1). The jury is the final arbiter. Experts do not exert total authoritarian control over a jury's award. Expert testimony is considered by the jury like all other testimony and the jury determines the appropriate amount of damages. The appellate courts of this State have approved jury verdicts of damages that exceeded the total amount of proven damages. Juries are not bound by the testimony of one witness. They considered all the evidence and determined $100,000 was the appropriate amount for future lost wages. That award does not shock the conscience.

¶58. This Court should not supplant its judgment for that of the jury. Beckward proved damages for future medical and future lost wages, and it was the jury's job to weigh that evidence and determine the exact amount of those damages. Since there was sufficient evidence to affirm the jury's verdict and there was no evidence of bias, passion, or prejudice, I would affirm the jury's verdict. Accordingly, I respectfully concur in part and dissent in part.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**